UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFFREY PAUL MILLER, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | CAUSE NO. 3:17-CV-461 RLM<br>(Arising out of 3:14-CR-77 RLM-MGG) |

OPINION AND ORDER

Jeffrey P. Miller pleaded guilty to a criminal information charging him with interstate transport of stolen goods in violation of 18 U.S.C. § 2314 and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The court sentenced Mr. Miller to a term of 135 months' imprisonment and two years' supervised release. Mr. Miller was also ordered to pay back over one million dollars in restitution. The judgment was affirmed on appeal and Mr. Miller is now before the court requesting that the court vacate his conviction and sentence under 28 U.S.C. § 2255. [Doc. No. 72]. For the following reasons, the court denies Mr. Miller's motion.

I. BACKGROUND

From the summer 2012 through January 2014, Jeffrey Miller stole large amounts of copper wire from his employer in Indiana, sold the wire in Michigan, and laundered some of his profits through casinos. After Mr. Miller's arrest, Mr. Fred Hains was appointed as his counsel. Mr. Hains then conducted numerous

1

meetings and communications with Mr. Miller and the Government, and represented Mr. Miller throughout the entirety of the case.

Mr. Hains met with Mr. Miller several times to discuss the case and possible plea agreement. This discussion included information and evidence surrounding the charges as well as specific terms and conditions of the plea agreement. Mr. Hains also explained the impact of the United States Sentencing Guidelines and outlined Mr. Miller's probable offense level. During this conversation, possible offense level reductions and enhancements were discussed. Mr. Hains opined that acceptance of responsibility reduction would lower Mr. Miller's offense level by three and didn't anticipate any enhancements for being an "organizer" of the alleged criminal activity. Mr. Hains explained to Mr. Miller that the offense level calculation could change if more unfavorable facts came to light.

Mr. Hains also communicated with the prosecution multiple times in tries to challenge various parts of the case and proposed plea agreement, including a recommendation for a lower sentence. These attempts were ultimately unsuccessful. The government showed willingness to provide Mr. Miller with a benefit if he continued to provide helpful information about other possible individuals associated with the charged theft and money laundering. Mr. Hains communicated his efforts and the governments posture to Mr. Miller. As Mr. Miller drew nearer to signing the proposed plea agreement, Mr. Hains further warned that Mr. Miller shouldn't sign the agreement if any questions or concerns arose. Mr. Miller claims that Mr. Hains said that signing the plea agreement

would result in a lower term of incarceration, and that this convinced Mr. Miller to sign the agreement, and it would have had Mr. Miller not continued with illegal activity (manufacturing and using methamphetamine).

The plea contained numerous provision, including one about Mr. Miller's acceptance of responsibility. The provision stated that such acceptance was contingent on Mr. Miller's continued cooperation. The government could also be released from the crediting Mr. Miller with acceptance of responsibility if Mr. Miller engaged in more criminal conduct including the use of controlled substances. During Mr. Miller's change of plea hearing, he indicated that he had enough time to discuss the plea agreement and case with Mr. Hains and that Mr. Hains had satisfactorily represented him. Mr. Miller further stated that he was not under the influence of any substances.

At sentencing, the government told the court that Mr. Miller had manufactured and used methamphetamine during the time between his change of plea and sentencing hearings. In light of this information the court rejected Mr. Miller's acceptance of responsibility reduction and imposed a total of six levels of enhancement for use of sophisticated means and organizer status relating to Mr. Miller's initial charges. Mr. Miller was sentenced to a total of 135 months. Mr. Miller then directly appealed, asking he be resentenced. The Seventh Circuit rejected the appeal and affirmed this court's sentence. United States v. Miller, 641 Fed. App'x. 563 (7th Cir. 2016).

## II. Discussion

Mr. Miller alleges that: 1) Mr. Hains never told him that continued substance abuse could result in the loss of relevant sentencing reductions; 2) Mr. Hains didn't conduct a thorough investigation of the case; 3) Mr. Hains didn't try to dismiss the criminal charges; 4) the plea agreement he signed was vague and absurd, and that no one explained to him the consequences of the plea; and 5) Mr. Hains didn't tell him that he faced the possibility of a sentencing enhancement for being an "organizer." The rules governing petitions filed under 28 U.S.C. § 2255 provide that once a motion is filed:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. After reviewing the record in this case, the court finds that Mr. Miller's petition can be resolved without a hearing. *See* Bruce v. United States, 256 F.3d 592, 597 (7th Cir. 2001); Daniels v. United States, 54 F.3d 290, 293 (7th Cir. 1995).

The court construes Mr. Miller's *pro se* petition liberally. Jackson v. Duckworth, 112 F.3d 878, 881 (7th Cir. 1997). Mr. Miller essentially alleges deficiencies in his representation with regards to the plea process through an ineffective assistance of counsel argument. Ineffective assistance of counsel claims applies to pleas. Lafler v. Cooper, 566 U.S. 156, 162 (citing Missouri v.

4

Frye, 566 U.S. 134, 134-135 (2012)). To prevail on an ineffective assistance of counsel claim, Mr. Miller must show both that his attorney's performance "fell below an objective standard of reasonableness" and that there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688-693 (1984). This is a difficult standard to meet; to prevail, Mr. Miller must show both "that counsel made errors so serious that 'counsel' was not functioning as the counsel guaranteed the defendant by the Sixth Amendment" and "that counsel's errors were so serious as to deprive [Mr. Miller] of a fair [result]." Strickland v. Washington, 466 U.S. at 687. Mr. Miller "bears a heavy burden" in proving that his counsel was consitutionally ineffective. Barker v. United States, F.3d 629, 633 (7th Cir. 1993). The court can address the Strickland prongs in the order it sees fit, because an insufficient showing as to either of the prongs is fatal to a claim. Strickland, 466 U.S. at 697; McDaniel v. Polley, 847 F.3d 887, 893 (7th Cir. 2017).

There is a strong presumption that counsel performed effectively. *See* Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003). "A court's scrutiny of an attorney's performance is 'highly deferential' to eliminate as much as possible the distorting effects of hindsight, and we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Vinyard v. United States, 804 F.3d at 1225 (quoting Strickland v. Washington, 466 U.S. at 687). In the context of guilty pleas, competent counsel "will attempt to learn all of the facts of the case, make an

5

estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty." Moore v. Bryant, 348 F.3d 238, 241 (7th Cir. 2003). Counsel doesn't need to "provide a precisely accurate prediction of the respective consequences of pleading guilty or going to trial." United States v. Barnes, 83 F.3d 934, 939 (7th Cir. 1996). Because reviewing courts shouldn't second-guess counsel's strategic choices, the burden of showing that counsel's decisions fell outside the wide range of reasonable strategic choices "rest[s] squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013).

"[E]ven if counsel's performance was deficient, a petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' meaning 'a probability sufficient to undermine confidence in the outcome.'" Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (quoting Strickland v. Washington, 466 U.S. at 694). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566 U.S. at 163; Hill v. Lockahart, 474 U.S. 52, 59 (1985) ("The defendant must show that there is a reasonable probability that, but for counsel's errors, he would have no have pleaded guilty and would have insisted on going to trial.").

*A. Substance Abuse and Sentencing Reductions*

Mr. Miller first alleges that his attorney never told him that continued substance abuse could result in the loss of an acceptance of responsibility

6

reduction at sentencing. Mr. Miller misunderstands the terms of the acceptance of responsibility reduction as set out in ¶ 9(f) of his plea agreement. He argues that he did indeed accept responsibility and that this court should not have taken non-relevant circumstances into consideration when deciding whether to grant the acceptance of responsibility reduction. These circumstances, however, involved Mr. Miller's use and production of methamphetamine between his change of plea hearing and his sentencing hearing. Mr. Miller's use of illegal drugs explicitly violated term of ¶ 9(f) of the guilty plea he signed, which stated that Mr. Miller could lose the relevant reduction if he "engage[d] in additional criminal conduct including any personal use of controlled substances." Petition To Enter A Guilty Plea, ¶ 9(f). According to Mr. Miller, Mr. Hains never told him that the plea agreement contained a provision that would result in the potential loss the three-level acceptance of responsibility reduction. Mr. Miller claims that he believed that once he had signed the plea agreement he had, in a sense, locked in his sentence and relevant reductions, regardless of what he did afterwards.

Mr. Miller, however, has indicated on the record the opposite of what he now argues. During his plea hearing, the magistrate judge explained that the court wasn't required to apply the government's acceptance of responsibility recommendation. Mr. Miller affirmed that he understood the nonbinding nature of the relevant provision at this hearing. He acknowledged that he had enough time to discuss both the case and plea agreement with Mr. Hains.

Mr. Miller cites Padilla v. Kentucky, 559 U.S. 356 (2010) to argue that Mr. Hains never discussed with him consequences of conduct outside the plea that

7

could impact sentencing recommendations. Mr. Miller mischaracterizes the collateral consequences doctrine from Padilla. In Padilla, the Supreme Court held that the defendant's counsel failed the first Strickland prong by not informing him that pleading guilty would result in his mandatory deportation. Id. at 359.[1] Padilla considered "[d]eportation as a consequence *of a criminal conviction*," not the consequences stemming from the defendant's conduct before his sentencing, as in Mr. Miller's case. Id. at 366 (emphasis added). Furthermore, our court of appeals has limited application of Padilla to the immigration and deportation context—no such issues are present here. *See* United States v. Reeves, 695 F.3d 637, 640 (7th Cir. 2012) ("The Supreme Court created a rule in Padilla specific to the risk of deportation and we see no justification for extending that to the realm of future criminal sentence enhancements."). Mr. Miller's reliance upon Padilla is therefore misplaced.

Further, the record supports the determination that Mr. Hains did discuss the plea with Mr. Miller. Mr. Miller stated at his plea hearing that this was so. Given Mr. Miller's own knowledge and acceptance of the plea agreement, allegations that Mr. Hains should have done more to explain the conditions therein do not raise a reasonable probability that the outcome of any proceeding would have ended differently. *See* Bethel v. United States, 458 F.3d 711, 718 (7th Cir. 2006) (finding that a defendant could not prove prejudice after he had

---

[1] Padilla did not decide whether the defendant in that case was prejudiced by his counsel's ineffective performance. Padilla, 559 U.S. at 360.

8

affirmed he understood at his plea hearing that his guilty plea was nonbinding); *See also* Lafler v. Cooper, 566 U.S. at 163; Hill v. Lockahart, 474 U.S. at 59.

   *B. Case Investigation*

Mr. Miller next alleges that Mr. Hains didn't thoroughly investigate his case and merely convinced Mr. Miller to plead guilty without doing his due diligence. Mr. Miller cites no evidence for this claim. On the contrary, the records indicates that Mr. Hains met with Mr. Miller several times and communicated with the Government on multiple occasions to try to get a more favorable result for his client. Mere allegations, without supporting evidence, can't overcome the strong presumption that counsel provided sufficient legal assistance. Strickland v. Washington, 466 U.S. at 689; Richardson v. United States, 379 F.3d 485, 488 (7th Cir. 2004). Mr. Miller hasn't identified any evidence suggesting that Mr. Hains's conduct and performance fell below an objectively reasonable standard.

Mr. Miller also hasn't shown that Mr. Hains acted bad faith, or that he didn't "attempt to learn all of the facts of the case, make an estimate of a likely sentence, [or] communicate the results of that analysis" to Mr. Miller. Moore v. Bryant, 348 F.3d at 241; *see also* United States v. Fudge, 325 F.3d 910, 924 (7th Cir. 2003). Mr. Hains's affidavit indicates that he made a concerted effort to serve his client and liaise with the Government. Without more, Mr. Miller has failed to show that Mr. Hains's performance was constitutionally insufficient. *See* United States v. Cieslowski, 410 F.3d 353, 358–359 (7th Cir. 2005), *cert. denied*, 546 U.S. 1097 (2006) (to prove inadequate performance, a defendant must show that

9

counsel did not try to learn the facts of the case and failed to make a good-faith estimate of a likely sentence); Spiller v. United States, 855 F.3d 751, 755–756 (7th Cir 2017). When Mr. Hains communicated with Mr. Miller about a possible plea agreement, he provided the best prediction that he was able to make at that time. Absolute precision is not required at the plea-bargaining stage. U.S. v. Barnes, 83 F.3d at 939. Mr. Miller hasn't identified any particular fact or issue in his case that Mr. Hains failed to investigate that would have affected Mr. Miller's decision to plead guilty.

Though Mr. Miller claims he lacked the requisite information intelligence to enter into a valid guilty plea, the standard for a defendant's information when the defendant pleads guilty "upon the advice of counsel" depends upon a showing by the defendant that counsel's advice fell below "the range of competence demanded of attorneys in criminal cases." Hill v. Lockahart, 474 U.S. at 56 (*quoting* McMann v. Richardson, 397 U.S. 759, 771 (1970)). Mr. Miller has not shown that Mr. Hains' advice and investigation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 689; Richardson v. United States, 379 F.3d 485, 488 (7th Cir. 2004). Nor has Mr. Miller provided any evidence that he was prejudice in any way – that he wouldn't have plead guilty – even if his assertions were true. *See* Lafler v. Cooper, 566 U.S. at 163; Hill v. Lockahart, 474 U.S. at 59.

*C. Dismissal of Charges*

Mr. Miller next alleges that Mr. Hains provided ineffective assistance of counsel because he didn't seek dismissal of the criminal charges against him. Mr. Miller suggests that his criminal activities were "local in nature" and don't fall under federal jurisdiction. Mr. Miller was charged with violating 18 U.S.C. §§ 2314 and 1956(a)(1)(B)(i). Section 2314 criminalizes the transportation of any stolen goods in interstate commerce. 18 U.S.C. § 2134. Under United States v. Rose, 590 F.2d 232, 236 (7th Cir. 1978), the mere intention to transport goods across state lines is sufficient to meet the "interstate commerce" requirement of § 2314. The money laundering statute, § 1956(a)(1)(B)(i) criminalizes making a financial transaction with property that one knows to be unlawfully gained to disguise that unlawful activity. Section 1956 defines "financial transaction" as one that "affects interstate . . . commerce" or uses a financial institution that engages in interstate commerce "in any way or degree." 18 U.S.C. § 1956(c)(4). "[T]he connection required for a money laundering offense need only be 'incidental' to the transaction or that interstate commerce must be affected only in 'some' manner." United States v. Laurenzana, 113 F.3d 689, 692 (7th Cir. 1997) (*quoting* United States v. Koller, 956 F.2d 1408, 1412 (7th Cir. 1992)).

Mr. Miller admitted that he took copper wire from Indiana to Michigan and that he deposited the money he received for selling the wire into his bank accounts. Mr. Miller would deposit the gains from his copper wire sales after spending time at casinos, claiming that the deposits were his gambling winnings. Mr. Miller can't reasonably claim that these transactions did not affect interstate

11

commerce—even under a narrow interpretation of interstate commerce, his acts fall under that definition for both crimes. Mr. Miller can't successfully claim that Mr. Hains failed to provide effective assistance by not trying to dismiss the criminal charges on a meritless legal argument. Had Mr. Hains sought such a dismissal, his efforts would have most likely failed. An attorney's decision not to pursue that strategy isn't ineffective assistance of counsel under either prong of the relevant analysis. *See* Richardson v. U.S., 379 F.3d at 488–489; Lafler v. Cooper, 566 U.S. at 163; Hill v. Lockahart, 474 U.S. at 59.

### D. Vagueness of Plea Agreement

Mr. Miller claims that the plea agreement he signed was vague and absurd. He alleges that the agreement didn't adequately explain what the government was required to prove and required Mr. Miller to waive his right to appeal without requiring the Government to give anything up on its end. The plea agreement doesn't explicitly outline each element of the two crimes Mr. Miller was charged with, the Government outlined the precise elements of both crimes at Mr. Miller's plea hearing. Immediately after the Government had finished outlining the elements, Mr. Miller affirmed to the magistrate judge that he knew and understood the elements of each crimes. Mr. Miller cites no authority for the proposition that a crime's elements must be set for in the written plea agreement, and in any event, he wasn't prejudiced by the agreement's silence on the precise elements of the crimes of which he was indicted. *See* Torzala v. United States, 545 F.3d 517, 523 (7th Cir. 2008) (finding that after the defendant was read

"each of the crime's elements . . . [defendant] affirmed that he understood . . . the elements of the offense."). He was read each element with his attorney, Mr. Hains, present and had the opportunity to confer with counsel. The magistrate judge told Mr. Miller that he had could speak with his attorney during the plea hearing if he had any questions or concerns, and Mr. Miller noted that he understood this.

Mr. Miller also mischaracterizes the plea agreement by claiming that the agreement only protects the Government. While the agreement does require Mr. Miller to waive his direct appeals rights, the Government agreed to recommend a particular sentence, agreed upon by both parties. The plea agreement is clear that the court wasn't bound by the sentence recommended by the Government—a fact reiterated at Mr. Miller's plea hearing. Though he is correct that the Government didn't specifically guarantee to Mr. Miller that the court would hand down a precise sentence, the Government made a meaningful concession. The Government also agreed to recommend a three-level reduction of Mr. Miller's offense level contingent on his acceptances of responsibility as conditioned in ¶ 9(f) of the plea agreement. Mr. Miller violated those conditions when he produced and used methamphetamine—he cannot now complain that the Government did not follow through on its promises when he failed to follow the terms of the agreement. Torzala v. United States, 545 F.3d at 523; Dowell v. United States, 694 F.3d 898, 901 (7th Cir. 2012).

*E. "Organizer" Enhancement*

Finally, Mr. Miller alleges that Mr. Hains provided ineffective assistance because he didn't tell Mr. Miller that he faced the possibility of an organizer enhancement. Notwithstanding that neither Mr. Hains nor the Government believed the organizer enhancement would apply when Mr. Miller pleaded guilty, Mr. Hains told Mr. Miller that his estimations of a possible sentencing range shouldn't be taken as guaranteed fact, which the magistrate judge further underscored during Mr. Miller's plea hearing. United States v. Cieslowski held that counsel's "inaccurate prediction of a sentence" does not constitute deficient performance. United States v. Cieslowski, 410 F.3d 353, 359 (7th Cir. 2005), *cert. denied*, 546 U.S. 1097 (2006). Rather, if counsel tries to "learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to [his] client before allowing the client to plead guilty," counsel has not performed deficiently. Bethel v. U.S., 458 F.3d at 717.

Mr. Hains didn't believe the organizer enhancement would be applied to Mr. Miller, and his affidavit indicates a reasonable basis for that belief. Mr. Miller essentially claims that Mr. Hains provided ineffective assistance because he didn't predict that the organizer enhancement would be applied at a future date. This isn't ineffective assistance of counsel. U.S. v. Cieslowski, 410 F.3d at 359; Moore v. Bryant, 348 F.3d at 341 ("The attorney's analysis need not provide a precisely accurate prediction of the respective consequences of pleading guilting or going to trial, [but] the scrutiny must be undertaken in good faith."). As

14

indicated above, Mr. Miller's contention on this point fails to satisfy the prejudice prong because he does not indicate that he would insisted on going to trial had Mr. Hains provided effective assistance. Mr. Miller only argues that he conviction be vacated. <u>Lafler v. Cooper</u>, 566 U.S. at 163; <u>Hill v. Lockahart</u>, 474 U.S. at 59.

III. CONCLUSION

Based on the foregoing, the court DENIES the motion to vacate [Doc. No. 102].

SO ORDERED.

ENTERED: <u>June 10, 2019</u>

<u>/s/ Robert L. Miller, Jr.</u>
Judge, United States District Court